IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CESAR V.**[1], | Case No. 1:18-cv-2120-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Debra F.J. Lee, CENTER FOR NON-PROFIT LEGAL SERVICES, INC., 225 West Main Street, P.O. Box 1586, Medford, OR 97501. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; John J. Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Cesar V. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

insurance benefits ("DIB") and Supplemental Social Security Income ("SSI"). Because the Commissioner's findings are supported by substantial evidence, the decision is AFFIRMED and this case is DISMISSED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

In June 2015, Plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of February 20, 2014. AR 82-102. Plaintiff was born on September 9, 1986 and was 27 years old as of the alleged disability onset. Plaintiff's applications were denied both initially and upon reconsideration, and Plaintiff requested an administrative hearing. AR 126-27. Plaintiff's hearing took place before an ALJ in October 2017. AR 41-67. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 14-34. Plaintiff requested review of the hearing decision, which the Appeals Council denied in October 2018. AR 5-10. The ALJ's decision then became the final decision of the agency from which Plaintiff seeks review.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through March 31, 2017 and proceeded to the sequential analysis. AR 20. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 20, 2014. At step two, the ALJ found the following severe, medically determinable impairments: lumbar stenosis, status post laminectomy, post laminectomy syndrome with permanent nerve damage of the left lower extremity, multilevel degenerative disc disease, and obesity. *Id.* At step three, the ALJ found that none of those impairments met or equaled the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Between step three and step four, the ALJ formulated Plaintiff's RFC and found that Plaintiff has the residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except a cane is required as needed for ambulation. The claimant is limited to no more than occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. The claimant is limited to no more than occasional balancing, stooping, kneeling, crouching, and crawling. He must avoid even moderate exposure to workplace hazards.

PAGE 5 – OPINION AND ORDER

*Id.* At step four, the ALJ found that Plaintiff could not perform past relevant work. AR 27. At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Based on the Vocational Expert's testimony at the administrative hearing, the ALJ identified three jobs that Plaintiff could perform: charge account clerk, document preparer, and ticket checker. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Plaintiff contends that the ALJ: (1) failed to provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony; (2) improperly rejected the medical source opinions of treating physicians and misinterpreted the objective medical evidence; (3) erroneously concluded that Plaintiff's severe impairments did not meet or equal one of the listed impairments; and (4) improperly found that transferability of jobs skills was not material to the disability determination.

### A. Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

An ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Here, the ALJ accurately summarized Plaintiff's subjective symptom testimony. Plaintiff testified that he last worked in February 2014 and that although he left that job for other reasons, he was already having trouble with his back at the time. AR 49. In 2016, Plaintiff had back surgery to relieve his back and leg pain, but he testified that the surgery produced mixed results. His right leg improved, but the pain, tingling, and numbness in his left leg worsened. AR 51. Plaintiff alleged that his pain has increased over the past year, to the point that he believed that he could not hold down a sedentary job. AR 52.

Plaintiff also suffers from drop foot. He has a brace, but he has fallen several times because of the drop foot. Plaintiff uses a cane to help him walk. Plaintiff testified that he could stand for at most five minutes at a time and walk for at most 15 minutes at a time. AR 58.

Plaintiff would then need to lie down for at least 30 minutes to recover. If Plaintiff were performing a strenuous activity, he testified that he would have to lie down for "about an hour to two hours so the pain can go down." AR 59. Plaintiff testified that he could sit for no longer than 30 minutes before needing to lie down because of the pain in his side and his leg. Plaintiff also stated that he could lift only about ten pounds. AR 60. Plaintiff's physical ailments allegedly affected his concentration as well. Plaintiff testified that he would be unable to concentrate 30 to 50 percent of the time because of the pain. AR 61. He would "forget doing stuff that they actually told [him] once or twice because [he's] more concentrated on the pain." *Id.*

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying step one of the framework. But the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 22. The ALJ cited inconsistencies in Plaintiff's subjective symptom testimony regarding treatment efficacy during the period of alleged disability. Plaintiff argues that this is not a clear and convincing reason to reject his testimony. The Court disagrees and finds that the ALJ cited substantial evidence to support her rejection of Plaintiff's subjective symptom testimony.[3]

An ALJ "may consider a range of factors in assessing credibility, including . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may

---

[3] The ALJ also cited the inconsistency between Plaintiff's reported symptoms and activities of daily living as a reason to reject Plaintiff's testimony. The Court need not address whether that was also a clear and convincing reason. Even if the ALJ erred on that point, any error was harmless. *See Carmickle*, 533 F.3d at 1162 (affirming ALJ's rejection of claimant's testimony where "the ALJ's decision remains legally valid, despite such error").

also consider inconsistencies between the claimant's testimony and the objective medical record. *See Batson*, 359 F.3d at 1196 (holding that ALJ properly discounted "graphic and expansive" pain symptoms that could not be explained on objective, physical basis by claimant's treating physician).

The ALJ identified material inconsistencies in Plaintiff's testimony and explained they they were relevant. She noted that Dr. Henderson—Plaintiff's examining physician, whose opinion she assigned "great weight"—observed that "there is perhaps some symptom amplification." AR 24. She further noted that Dr. Henderson flagged inconsistencies over how much treatment reduced Plaintiff's pain. Plaintiff told Dr. Henderson that medication provided "only minimal relief," but Dr. Henderson noted that "the records support significant relief of pain with medication." AR 1087. The ALJ pointed out more "inconsistencies in testimony" of that same nature. *Orteza*, 50 F.3d at 750 (citation omitted). In 2015, Plaintiff reported that medication reduced his pain by 80 percent and increased his ability to function by 60 percent. In 2016, Plaintiff told another of his physicians that the brace for his left foot "substantially improved" his ability to move around, and that his medications reduced his pain by 70 to 80 percent. AR 585. As recently as February 2017, Plaintiff reported that his medications reduced his pain by 70 percent and increased his ability to function by 70 percent. AR 1060. The ALJ properly cited Plaintiff's "inconsistent statements regarding the efficacy of his pain management regiment and physical therapy" as a clear and convincing reason to discount Plaintiff's subjective symptom testimony. AR 26.

## B. Medical Opinion Testimony

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and

PAGE 10 – OPINION AND ORDER

non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

PAGE 11 – OPINION AND ORDER

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Dr. Henderson examined Plaintiff in July 2017. The ALJ considered Dr. Henderson's medical opinion and gave it "great weight" because it was "consistent with [Plaintiff's] treatment history and the record as a whole with regard to the clinical findings and objective medical evidence documented by [Plaintiff's] treating providers." AR 25. In Dr. Henderson's opinion, Plaintiff could sit, stand, and walk for up to 30 minutes at a time and up to four hours total each day. AR 1091. Dr. Henderson also opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. AR 1090. Dr. Henderson noted that Plaintiff could walk only one

city block unassisted, but that he could walk longer distances with a cane. *Id.* Two state agency consultants also reviewed Plaintiff's medical record and determined that he could perform a full range of sedentary work. AR 104-25.

Plaintiff argues that the ALJ erred by not providing "specific and legitimate reasons for rejecting the medical records, which indicate a severe disability due to failed back surgery." ECF 13 at 10. But Plaintiff does not identify any specific "statements from [treating] physicians . . . that reflect judgments about the nature and severity of [his] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions" that Plaintiff argues the ALJ should have credited over Dr. Henderson's medical opinion. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining a medical opinion).

Further, upon reviewing the objective medical evidence itself, the Court finds that the ALJ rationally interpreted the evidence in the medical record. The ALJ accurately summarized the contents of the medical record: she discussed Plaintiff's history of physical therapy, the clinical findings of the physicians who treated him, and the results of his MRIs. AR 24. The ALJ also stated her interpretation of the objective medical evidence and made findings: she acknowledged that Plaintiff "experiences significant difficulty with back pain and ambulation" but found that "the clinical evidence and diagnostic findings do not substantiate disabling physical limitations with respect to [Plaintiff's] ability to sit, stand, walk or use his extremities." AR 26. That analysis satisfies the "substantial evidence" standard. *Garrison*, 759 F.3d at 1012. Thus, the ALJ's interpretation of the medical opinion evidence and the objective medical evidence must be upheld. *See Burch*, 400 F.3d at 679.

PAGE 13 – OPINION AND ORDER

## C. Step Three Analysis

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's severe impairments, either separately or in combination, meet or equal one of the presumptively disabling impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii); see 20 C.F.R. Part 404, Subpart P, Appendix I. In order to demonstrate that a claimant's impairment is the medical equivalent of one of the listed impairments, the claimant must present medical findings equal in severity to all the criteria of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis omitted); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

Plaintiff argues that the ALJ erred by "concluding that [Plaintiff's] chronic musculoskeletal diagnoses" did not meet or equal one of the presumptively disabling listed impairments. ECF 13 at 8. Plaintiff does not, however, specify which listing his severe impairments are equal to. Plaintiff offers no "theory, plausible or otherwise" as to how his combined impairments equal a listing. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). The ALJ carefully analyzed the medical evidence in the record and considered whether Plaintiff met or equaled three specific listed impairments. AR 21. She noted that Plaintiff did not meet Listing 1.02 because he could ambulate effectively, that he did not meet Listing 1.03 for the same reasons, and that he did not meet Listing 1.04 because there was no evidence of nerve root compression or lumbar spinal stenosis resulting in pseudoclaudification with inability to ambulate effectively. *Id.* Plaintiff does not dispute any of these findings or point to medical evidence overlooked by the ALJ that would support medical equivalence. *See Lewis*, 236 F.3d at 514. The ALJ committed no error at step three of the sequential analysis.

## D. Transferability of Job Skills

Plaintiff contends that the ALJ erred because she found "that transferability of job skills was not material" and made no finding on whether Plaintiff's job skills were transferable.

PAGE 14 – OPINION AND ORDER

ECF 13 at 10. The ALJ must decide whether job skills are transferable only when the determination is material to the ALJ's decision. The determination was immaterial to the ALJ's analysis here. The ALJ did not rely on any transferable job skills to determine that Plaintiff was not disabled; the ALJ found that Plaintiff was not disabled whether or not he has transferable skills. *See Applegate v. Comm'r Soc. Sec. Admin.*, 2015 WL 1825405, at *8 (D. Or. Apr. 22, 2015) (holding that the ALJ need not address transferability unless transferability of skills is dispositive). Thus, the ALJ did not need to make written findings and committed no error.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 19th day of May, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 15 – OPINION AND ORDER